**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CRYSTAL RICE, in her individual<br>capacity and as Personal Representative<br>of the ESTATE OF CYNTHIA RICE<br>133 Sycamore Drive<br>North East, MD 21901 | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CECIL COUNTY, MD<br>200 Chesapeake Blvd.<br>Suite 2100<br>Elkton, MD 21921 | : | |
| | : | Case No.:  **1:23-cv-2344** |
| PRIME CARE MEDICAL INC.<br>3940 Locust Lane<br>Harrisburg, PA 17109 | : | |
| | : | |
| SCOTT ADAMS, Sheriff<br>107 Chesapeake Blvd.<br>Suite. 112<br>Elkton, Maryland 21921 | : | |
| | : | |
| BARRY JANNEY<br>500 Landing Lane<br>Elkton, MD 21921 | : | |
| | : | |
| WILLIAM JOLLY<br>500 Landing Lane<br>Elkton, MD 21921 | : | |
| | : | |
| RICHARD RUNK<br>500 Landing Lane<br>Elkton, MD 21921 | : | |
| | : | |
| TYLER FOX<br>500 Landing Lane<br>Elkton, MD 21921 | : | |
| | : | |
| TIMOTHY DOW<br>500 Landing Lane<br>Elkton, MD 21921 | : | |

M.L. HALLIGAN : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
JESSICA REIL : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
JEAN JONES : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
JACOB PLATT : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
MICHAEL REA : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
KATHLEEN KISNER : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
SAMANTHA CHESTNUT : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
TAYLOR KENNEDY-LAROSA : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
MATTHEW CARR : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
MARY ALLEN : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
DARYL OSBORNE : 
500 Landing Lane : 
Elkton, MD 21921 : 
: 
NURSE KELLY KIRLIN :

3940 Locust Lane  
Harrisburg, PA 17109  

NURSE TOBIAS MUTURI  
3940 Locust Lane  
Harrisburg, PA 17109  

NURSE ERICA JENKINS  
3940 Locust Lane  
Harrisburg, PA 17109  

BRIANNA CULP  
3940 Locust Lane  
Harrisburg, PA 17109  

NURSE PATRICIA MEARS  
3940 Locust Lane  
Harrisburg, PA 17109  

NURSE BENILIZ OHL  
3940 Locust Lane  
Harrisburg, PA 17109  

DR. CHRISTOPHER KIRCHER  
3940 Locust Lane  
Harrisburg, PA 17109  

DOE Defendants 1-50  

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Defendants.                                          :

**COMPLAINT AND JURY DEMAND**

Plaintiffs, the ESTATE OF CYNTHIA RICE, by Crystal Rice, Personal Representative

of the Estate, and CRYSTAL RICE, daugther of Cynthia Rice, by their attorneys RANDY

EVAN MCDONALD, BRIAN K. MCDANIEL, ADRIAN ST. HILL, AND THE COCHRAN

FIRM, complaining of Defendants CECIL COUNTY, MD, SCOTT ADAMS, BARRY

JANNEY, WILLIAM JOLLY, RICHARD RUNK, TYLER FOX, TIMOTHY DOW, M.L.

HALLIGAN, JESSICA REIL, JEAN JONES, JACOB PLATT, MICHAEL REA, KATHLEEN

KISNER, SAMANTHA CHESTNUT, TAYLOR KENNEDY-LAROSA, MATTHEW CARR,

MARY ALLEN, DARYL OSBORNE, NURSE KELLY KIRLIN, NURSE PATRICIA MEARS, NURSE BENILIZ OHL, DR. CHRISTOPHER KIRCHER, PRIME CARE MEDICAL INC., DOE DEFENDANTS 1-50, states as follows:

## I. INTRODUCTION

1.      Cynthia Rice died in the Cecil County Detention Center ("CCDC") located in Elkton, MD, on August 29, 2023, from opioid withdrawal.

2.      Cecil County was in the midst of an opioid crisis at the time of Ms. Rice's death.

3.      The county remains in this crisis to this day.

4.      The sheriffs office, medical and custodial staff at CCDC, including all defendants were aware of this ongoing crisis.

5.      This is an action brought by Crystal Rice, the daughter of Ms. Cynthia Rice and personal representative of her Estate, to vindicate egregious violations of Ms. Rice's Constitutional rights.

6.      Cynthia Rice was a detainee at the Cecil County Detention Center ("CCDC") who suffered opiate withdrawal while she was in custody on August 28 and August 29 of 2020.

7.      Over the course of fourteen hours, Cynthia Rice displayed serious symptoms of a opiate withdrawal, including pain rated a "10/10". The medical and custody staff at CCDC were aware of these conditions both through their own personal observation and through the complaints of Cynthia Rice and her cellmates.

8.      Medical records indicate that the medical and custody staff were made aware that Ms. Rice would suffer withdrawal.

9. Despite their knowledge of her condition and Ms. Rice's wailing in pain throughout the night, medical and custody staff did not act to assist Ms. Rice and told her to "shut up" while she winced in pain.

10. At around 3:00 p.m. on August 29, 2020, Cynthia Rice, age 46, was found unresponsive at the CCDC ("the Facility," and/or "the Jail") and pronounced dead shortly thereafter. Ms. Rice's death was wholly avoidable.

11. It is well known that opioid withdrawal can be deadly and should be treated with the utmost concern.

12. Ms. Rice suffered from opiate addiction. When processed into CCDC on August 29, 2020, Ms. Rice told both Sheriff's deputies and Prime Care Medical, Inc., employees that she had recently used opiates and, as a result, would undergo withdrawal. Ms. Rice also disclosed that she suffered from rheumatoid arthritis. Despite knowing of Ms. Rice's impending withdrawal - described by many as the worst type of sickness that they had ever experienced – Prime Care Medical, Inc., employees failed to prescribe and/or carry out a proactive withdrawal treatment regime and also failed implement a standard opiate withdrawal scoring protocol known as "COWS".

13. COWS protocol is a means of measuring symptoms of opiate withdrawal over a period of time. The protocol generally requires medical personnel to regularly assess a patient and assign numerical ratings to common signs and symptoms of opiate withdrawal. The summed score is used to assess a patient's level of opiate withdrawal.

14. At 8:59 a.m. on August 29, 2020, an incomplete set of vitals was taken by a Prime Care Medical, Inc., employee. Thereafter, all monitoring, observations, and treatment of Ms. Rice simply ceases.

15. Jail records indicate that no visual rounds were recorded by the custody or medical staff.

16. Around 12:30 p.m. on August 29, 2020, a deputy approached the cell where Ms. Rice was housed. The deputy asked was Ms. Rice ok and the response by in inmate was in the negative. When personnel entered the cell, Ms. Rice was unresponsive and would be pronounced dead shortly thereafter by EMS personnel who responded to the scene.

17. Had Ms. Rice been transported to a local hospital earlier that day (August 29, 2020), she would not have died.

18. Throughout her time at CCDC on August 29, 2020, Ms. Rice requested medical treatment and medication but was denied by the custody and medical staff.

## II. JURISDICTION AND VENUE

19. This action is brought pursuant to 42 U.S.C. § 1983 and Maryland law to redress Defendants' tortious conduct and their deprivation of Cynthia Rice and Crystal Rice's rights secured by the U.S. Constitution.

20. This Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of the state-law claims pursuant to 28 U.S.C. § 1367.

21. Plaintiffs provided Cecil County with notice of Plaintiff's claims pursuant to the Local Government Tort Claims Act on September 9, 2021. Pursuant to Md. Code, CJP, § 5-304(d), Plaintiffs intend to show good cause for the 10 day delay and cannot show any prejudice to their defense in the 10 day delay.

22. Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b). Ms. Rice resides in this judicial district, the majority of

Defendants reside or work in this judicial district, and the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## III. PARTIES

23. The Plaintiff, THE ESTATE OF CYNTHIA RICE ("Plaintiff") is established in Cecil County, MD.

24. CRYSTAL RICE, plaintiff, is the daughter of CYNTHIA RICE and personal representative of THE ESTATE OF CYNTHIA RICE.

25. Defendant CECIL COUNTY is a municipal county, duly organized and existing by virtue of the laws of the State of Maryland, and was responsible for all pretrial detainees arrested by Cecil County authorities. The County was responsible for and had the duty to provide a safe environment for pretrial detainees that was free from danger and an environment that provided appropriate medical treatment. It was also the employer of all Custody Defendants.

26. Defendant SCOTT ADAMS, Sheriff of Cecil County, MD, was at all relevant times the duly elected sheriff of Cecil County, MD, and/or, stands in the shoes of the person who was the sheriff. As such, he was and is responsible for the care and custody of the detainees and inmates at CCDC and has the obligation to monitor and direct Prime Care activities conducted at CCDC on his behalf. Defendant Adams is a constitutional officer independent of Cecil County. He is the commanding officer of all deputies and employees under his command. He is responsible for all the training, supervision, and conduct of all deputies and employees under his command, and promulgating policies and customs regarding the training and supervision of such deputies and employees. He was/is responsible by law for the operation of CCDC, for enforcing

the regulations of the Cecil County Sheriff's Department, and for ensuring that personnel under his command obey the laws of the State of Maryland and the United States.  Defendant Adams is and was vested with the responsibility to hire, train, and supervise employees, to set and enforce policies and procedures, and to provide safety, protection and health of those confined in CCDC, including Ms. Rice.

*Prime Care Medical, Inc.*

27.     Defendant Prime Care Medical, Inc., ("Prime Care") is a Pennsylvania corporation with offices and employees in the Cecil County, MD.

28.     Prime Care Medical has entered into a contract with CCDC and/or Cecil County to provide medical services to detainees housed in CCDC pursuant to CCDC and/or Cecil County's duty to provide medical care to those detainees. Under this contract, Prime Care Medical has specifically agreed to provide for the health, safety, care and medical treatment of detainees.

29.     Under its contract with CCDC and/or Cecil County, Prime Care Medical was acting as the apparent and actual agent, servant and contractor of CCDC and/or Cecil County, and was responsible for the care, health, safety and proper medical treatment of all detainees in CCDC's facilities, including Ms. Rice. Pursuant to that contract, CCDC and/or Cecil County adopted Prime Care Medical's policies, practices, habits, customs, procedures, training and supervision as its own, and Prime Care Medical adopted CCDC's and/or Cecil County's policies, practices, habits, customs, procedures, training and supervision as its own.

30.     Prime Care Medical is a proper entity to be sued because it is a corporation acting under the color of state law within the meaning of 42 U.S.C. § 1983.

31.     Prime Care Medical is a proper entity to be sued because its policies, practices, habits, customs, procedures, training and supervision of staff and contractors, including the individual Defendants obligated to provide health care to Ms. Rice herein, were deliberately indifferent to the legitimate and serious emergency medical needs of individuals in CCDC custody, including Ms. Rice.

32.     Prime Care Medical is a proper entity to be sued under Ms. Rice's state law causes of action because Prime Care Medical is a private corporation and is entitled to no immunity under the Local Government Tort Claims Act.

*Individual Health Care Defendants*

33.     NURSE KELLY KIRLIN was a nurse for Ms. Rice at the CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of Prime Care and/or an agent of the CCDC and/or Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

34.     NURSE TOBIAS MUTURI was a nurse for Ms. Rice at the CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of Prime Care and/or an agent of the CCDC and/or Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

35.     NURSE ERICA JENKINS was a nurse for Ms. Rice at the CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of Prime Care and/or an agent of the

CCDC and/or Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

36.     BRIANNA CULP was a nurse or medical provider for Ms. Rice at the CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of Prime Care and/or an agent of the CCDC and/or Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

37.     NURSE PATRICIA MEARS was a nurse for Ms. Rice at the CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of Prime Care and/or an agent of the CCDC and/or Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

38.     NURSE BENILIZ OHL was a nurse for Ms. Rice at the CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of Prime Care and/or an agent of the CCDC and/or Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

39.     DR. CHRISTOPHER KIRCHER was a doctor for Ms. Rice at the CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of Prime Care and/or an agent of the CCDC and/or Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

40. DOE DEFENDANTS 1-25 served as medical service providers for Ms. Rice at the CCDC during the period of August 28 through August 29, 2020, and were responsible for the health, safety, and proper medical treatment of Ms. Rice. They were employees and agents of Prime Care and/or agents of the CCDC and/or Cecil County, acting within the scope of their employment at all times relevant to this lawsuit.

*Individual Custody Defendants*

41. BARRY JANNEY was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

42. WILLIAM JOLLY was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

43. RICHARD RUNK was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

44. TYLER FOX was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

45. TIMOTHY DOW was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

46. M.L. HALLIGAN was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

47. JESSICA REIL was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

48. JEAN JONES was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

49. JACOB PLATT was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

50. MICHAEL REA was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms.

Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

51. KATHLEEN KISNER was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

52. SAMANTHA CHESTNUT was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

53. TAYLOR KENNEDY-LAROSA was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

54. MATTHEW CARR was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

55. MARY ALLEN was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. She was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of her employment at all times relevant to this lawsuit.

56. DARYL OSBORNE was a custody officer at CCDC during the period of August 28 and 29, 2023, and was responsible for the health, safety, and proper medical treatment of Ms. Rice. He was an employee and agent of the CCDC and/or an agent of Cecil County, acting within the scope of his employment at all times relevant to this lawsuit.

57. DOE DEFENDANTS 26-50 served as custody officers at CCDC during the time Ms. Rice was detained there and were responsible for the health, safety, and proper medical treatment of Ms. Rice. They were employees and agents of the CCDC and/or agents of Prime Care, acting within the scope of their employment at all times.

**IV. FACTS**

58. On August 28, 2020, Ms. Rice was a 53-year-old resident of Cecil County when she was arrested and detained.

59. The Intake staff, medical/nursing professionals, and Sheriffs Office employees assigned to evaluate inmates arriving at CCDC were informed by Ms. Rice that she had recently used opiates and would likely experience withdrawal.

60. Ms. Rice was booked at the Cecil County Sheriff's Office on August 28, 2020, at 11:09 p.m.

61. At the time of her booking, she informed the Sheriff's Office of her rheumatoid arthritis and that she was suffering from opiate withdrawal and/or would suffer from heroin withdrawal.

62. A few minutes after booking, Ms. Rice was seen by the Commissioner who set bail at $7,500.00.

63. On August 29, 2020, at 12:28 p.m. Ms. Rice was found unresponsive and blue in color inside the booking cell.

64. Ms. Rice was not given any treatment for her withdrawal even though the jail and custody defendants knew that she was opioid dependent, would suffer from withdrawal and had already begun exhibiting symptoms of severe withdrawal when she was booked at CCDC.

65. When a medical intake screening was conducted on Ms. Rice at 2:40 a.m. on August 29, 2020, the medical staff noted the following:

a. That Ms. Rice had suffered from heroin withdrawal during previous incarcerations.
b. That Ms. Rice had a previous history of heroin abuse.
c. That Ms. Rice showed signs of depression (crying, emotionally flat).
d. That Ms. Rice was overly anxious, panicked, afraid, or angry.
e. That Ms. Rice appeared to be under the influence of a drug.
f. That the medical and custodial staff were aware that Ms. Rice had been previously in custody.
g. Ms. Rice appeared disheveled.
h. Ms. Rice was listed as a heroin addict.
i. Ms. Rice indicated that she used four bags a day, seven days a week and had not used since the previous day.
j. The condition of Ms. Rice's gums and teeth was listed as "poor".
k. That Ms. Rice consented to be treated.
l. Ms. Rice indicated that she was feeling body aches but did not have a fever.
m. Ms. Rice had been previously prescribed opioid detox at the same facility.

66. Ms. Rice was not placed in detox.

67. At 3:04 a.m. on August 29, 2020, Ms. Rice's blood pressure was noticeably high at 141/95.

68. There were no detox checks performed for Ms. Rice even though a "high priority" detox check appointment was set for Ms. Rice.

69. After Ms. Rice's initial medical screening, which indicated that she would suffer from opioid withdrawal, she was taken back to a booking cell and was never placed in detox.

70. On August 29, 2020, at 9:43 a.m. an order for opioid detox and clonidine was put in for Ms. Rice.

71. The Medication Administration Record indicate that no medication was given to Ms. Rice at any time on August 28 or 29, 2020.

72. At 9:52 a.m. on August 29, 2020, Ms. Rice reported being in pain that she measured at 10 out of 10. Incomplete vital signs were assessed and blood pressure medication was prescribed.

73. Thereafter, all monitoring, observations, and treatment of Ms. Rice simply ceases.

74. No blood pressure medication was given to Ms. Rice while she was in CCDC.

75. Throughout the early morning hours and day of August 29, 2020, Ms. Rice screamed and writhed in pain. The custody staff at CCDC told her to "shut up" and did not provide assistance to Ms. Rice.

76. No deputy or medical staff took any action to aid the acutely and obviously ill Ms. Rice.

77. At about 12:30 p.m. on August 29, 2020, Ms. Rice was found unresponsive in her cell.

78. Ms. Rice passed away from opioid withdrawal.

## V. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983**
**Denial of Medical Care—Eighth and Fourteenth Amendments**
**(Against Health Care and Custody Defendants and Prime Care and Cecil County)**

79. Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this Complaint as if set forth in full herein.

80. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected to any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

81. Plaintiff had a clearly established right under the Eighth and Fourteenth Amendments to be free from objective unreasonableness and/or deliberate indifference to her serious medical needs.

82. Each of the Defendants to this claim acted with deliberate indifference to Ms. Rice's serious medical needs when they failed to diagnose her need for medical care, failed to provide her medical care, failed to accurately record the details of her condition, failed to respond to request for medical attention from Ms. Rice, and failed to provide Ms. Rice with emergency care or transfer her to a facility where emergency care could be provided. Each of the Defendants to this claim engaged in this misconduct and these omissions despite their knowledge of Ms. Rice's need for medical attention, despite Ms. Rice's obvious symptoms of opioid withdrawal, and despite knowing that a failure to address opioid withdrawal with immediacy and urgency can cause serious pain, significant injury and death.

83. In the alternative, Defendants were objectively unreasonable in their failure to provide medical attention to Ms. Rice.

84. Each of the Defendants to this claim were made aware of Ms. Rice's condition by observing it themselves, by being informed of her condition by other detainees in the facility, and by being informed by other employees and personnel of Prime Care and the CCDC.

85. None of the Defendants to this claim is entitled to qualified immunity.

86. Each of the Defendants to this claim is liable to Plaintiff for the violation of 42 U.S.C. § 1983.

87. The acts and omissions of the Defendants to this claim as described herein intentionally deprived Ms. Rice of her constitutional rights and were contributing proximate causes of Ms. Rice's injuries and death.

88. On information and belief, each of the Defendants to this claim acted pursuant to the specific directions of supervisory personnel at all times while ignoring Ms. Rice's need for emergency medical treatment.

89. In addition, Defendants reached an agreement among themselves and others known and unknown to deprive Ms. Rice of her constitutional rights and to protect one another from liability for depriving Ms. Rice of her rights, all as described in the various paragraphs of this Complaint.

90. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was otherwise a willful participant in joint activity.

91. Moreover, as described more fully above, Defendants each had a reasonable opportunity to prevent the violation of Ms. Rice's rights at issue in this Complaint had they been so inclined, but they each failed to do so.

92. As a direct result of Defendants' unlawful conduct, Ms. Rice suffered tremendous pain, injuries, anguish, suffering, and, ultimately, death, entitling her Estate to compensatory and special damages by way of survival.

93. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest and costs as allowable by federal law.

94.     Plaintiff is entitled to punitive damages against each of the Defendants to this claim, in that their actions were made maliciously, willfully, and with a reckless and wanton disregard of Plaintiff's life and constitutional rights.

**SECOND CLAIM FOR RELIEF**
Violation of 42 U.S.C. § 1983
Policy & Practice of Denial of Medical Care
(Against Prime Care and Cecil County)

95.     Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this Complaint as if set forth in full herein.

96.     As a private corporation acting pursuant to its agreement with CCDC to provide medical services to detainees charged with violation of Maryland criminal laws, Prime Care was at all times relevant to the events described in this Complaint acting under color of law and, as the provider of healthcare services to detainees incarcerated at CCDC, was responsible for the creation, implementation, oversight, and supervision of all policies and procedures followed by employees and agents of Prime Care and CCDC.

97.     Ms. Rice's injuries were proximately caused by the policies and practices of Prime Care and Cecil County.

98.     Prime Care and Cecil County maintain a policy, practice and custom regarding treatment of detainees displaying symptoms of serious medical emergencies that includes underreporting the severity of these emergencies and denying appropriate medical care. On information and belief, Prime Care and Cecil County (custody staff) employees are informally instructed to deliberately ignore detainees' medical complaints, and to act as though detainees are only "faking" their injuries.

99.     On information and belief, Prime Care medical staff and Cecil County employees working in CCDC are trained to ignore or underreport symptoms of opioid withdrawal and

similar emergencies, amounting to deliberate indifference to the serious medical needs of detainees presenting symptoms of opioid withdrawal, including Ms. Rice.

100. On information and belief, Prime Care and Cecil County supervise their employees to ignore or underreport symptoms of opioid withdrawal and similar emergencies, amounting to deliberate indifference to the serious medical needs of detainees presenting symptoms of a opioid withdrawal, including Ms. Rice.

101. On information and belief, Prime Care and Cecil County ratifies the conduct of their employees who ignore or underreport symptoms of opioid withdrawal and similar medical emergencies through review and approval of these employees' performance, and through the decision to continue the employment of individuals who ignore and underreport medical emergencies of CCDC detainees, amounting to deliberate indifference to the serious medical needs of detainees presenting symptoms of opioid withdrawal, including Ms. Rice.

102. In August 2020 and for a period of time prior thereto, Prime Care and Cecil County had notice of a widespread practice by employees and agents at CCDC under which detainees with serious medical conditions, such as Ms. Rice, were routinely denied access to proper or sufficient medication and medical attention. It was common to observe detainees of CCDC with clear symptoms of serious medical illness, injury, or other conditions, who frequently requested medical care and medication, whose requests were routinely denied or completely ignored. A significant portion of these denials of medical care resulted in injury or death.

103. Specifically, there existed at CCDC a widespread practice under which employees and agents of Prime Care and the CCDC and/or Cecil County, including correctional officers and medical personnel, commonly failed or refused to: (1) properly examine detainees with serious

medical conditions; (2) provide proper medications to detainees with serious medical conditions; (3) respond to detainees who request medical attention or medical attention; (4) communicate medical needs of detainees among correctional officers and medical staff; (5) respond to detainees who exhibits obvious signs of medical need or illness; or (6) refer detainees for outside medication attention.

104. These widespread practices were allowed to flourish because Prime Care and Cecil County directly encouraged and were thereby the moving forces behind the very type of misconduct at issue by failing to adequately train, supervise, and control correctional officers and medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Mr. Rice.

105. Prime Care and Cecil County are sued herein for maintaining these policies, practices, customs, failures to train, failures to supervise, and for ratifying conduct regarding treatment of detainees displaying symptoms of serious medical emergencies, all of which amount to deliberate indifference to those detainees' serious medical needs. These policies and other conduct on behalf of Prime Care and Cecil County were the moving force behind the violation of Ms. Rice's constitutional rights and her death. Ms. Rice's injuries were caused by employees and contractors of CCDC and Prime Care, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices of Prime Care and Cecil County in engaging in the misconduct described in this Complaint.

106. Prime Care maintained these policies in order to maximize profit, without regard to its constitutional and medical obligations to the detainees whose care was entrusted to Prime Care.

107. Time is of the essence in proper treatment of opioid withdrawal, and these Defendants' policies, practices, customs, training, and supervision are deliberately indifferent to the medical needs of a detainee presenting symptoms of opioid withdrawal, such as what occurred in the case of Ms. Rice.

108. Prime Care and Cecil County were on notice that its policies practices, customs, failures to train, and failures to supervise would result or had resulted in a pattern of failing to provide adequate services, amounting to deliberate indifference to the detainees' serious medical needs.

109. Prime Care and Cecil County knew that potentially serious or fatal consequences could be caused by their policies, practices, customs, failures to train, and failures to supervise, as occurred in this case.

110. As a direct result of these Defendants' unlawful conduct, Ms. Rice suffered tremendous pain, injuries, anguish, suffering, and, ultimately, death, entitling her Estate to compensatory and special damages by way of survival.

111. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as pre-judgment interest and costs as allowable by federal law.

112. Plaintiff is entitled to punitive damages against each of the Defendants to this claim, in that their actions were made maliciously, willfully, and with a reckless and wanton disregard of Plaintiff's life and constitutional rights.

### THIRD CLAIM FOR RELIEF
### Violation of Article 24 of the Maryland Declaration of Rights
### Prohibition Against Deprivation of Life Without Judgment of One's Peers
### (Against All Defendants)

113. Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this Complaint as if set forth in full herein.

114. Each of the Defendants named in this Third Claim for Relief, either individually or through their agents and/or employees, deprived Ms. Rice of her life through their collective failure to provide her with emergency medical attention.

115. A policy, practice, and custom existed within CCDC through which medical personnel and custody staff were given specific directions to ignore the medical needs of inmates who were known to have serious medical conditions that required emergency care.

116. All supervisory custody personnel at CCDC had knowledge of the policy, practice and custom within CCDC of assuming that detainees were faking their illness, and actively encouraged custody and medical personnel to operate under that assumption. As supervisory personnel, knowledge of the policies, practices, customs and culture of ignoring detainee complaints is imputed to CCDC and Cecil County.

117. On information and belief, Prime Care medical staff and CCDC custody staff are trained, both formally and informally, to follow a custom of disregarding a patients' recent medical history and of assuming that their patients are faking their illness, amounting to deliberate indifference to the serious medical needs of detainees presenting symptoms of opioid withdrawal, including to those needs presented by Ms. Rice.

118. Cecil County and CCDC had knowledge of Prime Care's policies, practices and customs through numerous detainee complaints, lawsuits and reports of deficiencies in Prime Care's provision of emergency medical services.

119. Prime Care and Cecil County are sued herein for maintaining these policies, practices and customs regarding treatment of detainees displaying symptoms of serious medical emergencies, which amount to deliberate indifference to those detainees' serious medical needs.

These policies were the moving force behind the violation of Ms. Rice's constitutional rights and her death.

120. Prime Care and Cecil County are sued herein for their failure to adequately train and supervise its employees and/or contractors in responding to the serious medical needs of detainees displaying symptoms of serious medical emergencies.

121. Prime Care and Cecil County are sued herein for ratifying the conduct of its agents and/or employees who adhered to the policy of ignoring the serious medical needs of detainees displaying symptoms of serious medical emergencies.

122. These failures to train, failures to supervise, and ratification of wrongful conduct were the moving force behind the violation of Ms. Rice's constitutional rights and her death.

123. Time is of the essence in proper treatment of opioid withdrawal, and Defendants' policies, practices, customs, training, and supervision are deliberately indifferent to the medical needs of a detainee presenting symptoms of opioid withdrawal, such as what occurred in the case of Ms. Rice.

124. Prime Care and Cecil County were on notice that its policies practices, customs, failures to train, and failures to supervise would result or had resulted in a pattern of failing to provide adequate services, amounting to deliberate indifference to the detainees' serious medical needs.

125. Prime Care and Cecil County knew that potentially serious or fatal consequences could be caused by their policies, practices, customs, failures to train, and failures to supervise, as occurred in this case.

126. As a direct result of the Custody Defendants', Health Care Defendants' Prime Care's, and Cecil County's unlawful conduct, Ms. Rice suffered tremendous pain, injuries,

anguish, suffering, and, ultimately, death, entitling her Estate to compensatory and special damages by way of survival.

127. Plaintiff is further entitled to attorney's fees and costs, as well as pre-judgment interest and costs as allowable under the Maryland Declaration of Rights.

128. Plaintiff is entitled to punitive damages against the Health Care Defendants, Prime Care, and Cecil County, in that these Defendants' actions were made maliciously, willfully, and with a reckless and wanton disregard of Plaintiff's life and constitutional rights.

**FOURTH CLAIM FOR RELIEF**
**Negligence**
**(Against Custody Defendants and Cecil County)**

129. Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this Complaint as if set forth in full herein.

130. On information and belief, the Custody Defendants and each of the Doe Defendants observed Ms. Rice, when she was first booked at CCDC and throughout the time that she suffered from opioid withdrawal symptoms that ultimately took her life.

131. The Custody Defendants and the Doe Defendants had a duty as custody officers to monitor Ms. Rice's health and well-being.

132. The Custody Defendants and the Doe Defendants breached that duty by failing to make a genuine assessment of Ms. Rice's condition.

133. The Custody Defendants and the Doe Defendants breached that duty by failing to notify any appropriate medical personnel of Ms. Rice's need for emergency treatment.

134. If the Custody Defendants and the Doe Defendants had made a genuine assessment of Ms. Rice's condition or notified any appropriate medical personnel, Ms. Rice could have received proper emergency care.

135.     The Custody Defendants and the Doe Defendants were acting in their individual capacities, and within the scope of their employment and public duties, and Cecil County had the power to control the Custody Defendants' and the Doe Defendants' actions at all times relevant herein.

136.     Emergency treatment and/or proper detox and/or medication were the only methods through which Ms. Rice's opioid withdrawal could have been properly treated, and Ms. Rice experienced tremendous pain, injury, anguish, suffering, and, ultimately, death because she did not receive any such treatment, entitling her Estate to compensatory and special damages by way of survival.

**FIFTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

137.     Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this Complaint as if set forth in full herein.

138.     Each of the Health Care Provider Defendants and Custody Defendants named herein knew of the severe injuries, pain and suffering that may result from opioid withdrawal.

139.     Each of the Health Care Provider Defendants and Custody Defendants named herein knew of the severe injuries, pain and suffering that may result from failing to appropriately treat opioid withdrawal.

140.     Each of the Health Care Provider Defendants named herein intentionally denied Ms. Rice medical care with full knowledge of the consequences of their actions.

141.     Each of the Custody Defendants named herein intentionally refused to notify emergency medical staff of Ms. Rice's condition despite the fact that they could see and hear that she was dying.

142.     Each of the Health Care Provider Defendants' actions in denying Ms. Rice medical care were extreme, outrageous and unusually unreasonable given the fact that Ms. Rice had been showing symptoms of opioid withdrawal for approximately four days, including complaints of a severe headache, paralysis on the right side of her body, disorientation, inability to eat, and loss of control over bodily functions.

143.     Each of the Health Care Provider Defendants acted within the scope of their employment with Prime Care.

144.     Each of the Custody Defendants' actions in refusing to notify emergency medical staff of Ms. Rice's condition despite the fact that they could see that she was in severe and extreme peril were extreme, outrageous and unusually unreasonable given the fact that each of the Custody Defendants were aware of Ms. Rice's symptoms of opioid withdrawal.

145.     Each of the Custody Defendants acted both in their individual capacity and in the course of their official and public duties.

146.     Ms. Rice suffered extreme and severe emotional distress for the hours during which she was denied medical care, reported pain on a scale of "10/10".

147.     Because of the extreme emotional distress that Ms. Rice suffered, her Estate is entitled to recover compensatory and special damages by way of survival.

**SIXTH CLAIM FOR RELIEF**
**Wrongful Death**
**(Against All Defendants)**

148.     Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this Complaint as if set forth in full herein.

149.     Each of the defendants named herein, either individually or through their agents or employees, wrongfully caused the death of Ms. Rice.

150. Ms. Crystal Rice is the daughter of Ms. Cynthia Rice.

151. Each of the Defendants' unconstitutional and deliberately indifferent acts, omissions, policies, practices, customs and approvals of such customs were wrongful acts within the meaning of Maryland Courts and Judicial Proceedings § 3-902, and was the proximate cause of Ms. Rice's untimely and wrongful death.

152. In addition, Defendants violated Ms. Crystal Rice's constitutional right to due process by intentionally causing the death of her mother, as described in detail above.

153. Ms. Crystal Rice, as Ms. Cynthia Rice's daughter, is entitled to recover for her mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, filial care, attention, advice and counsel related to the loss of her late mother.

**SEVENTH CLAIM FOR RELIEF**
**Respondeat Superior**
**(Against Prime Care and Cecil County)**

154. Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this First Amended Complaint as if set forth in full herein.

155. In committing the acts alleged in the preceding paragraphs, the Individual Custody and Healthcare Defendants were employees, members, and agents of Prime Care and/or Cecil County, acting at all relevant times within the scope of their employment.

156. Prime Care is liable as principal for all torts committed by its agents.

157. Cecil County is liable as principal for all torts committed by its agents.

**EIGHTH CLAIM FOR RELIEF**
**Indemnification**
**(Against Prime Care and Cecil County)**

158. Plaintiff hereby incorporates and re-alleges each and every preceding paragraph of this Complaint as if set forth in full herein.

159. Maryland law provides that public entities are directed to pay any tort judgment for which employees are liable within the scope of their employment.

160. Defendants are or were employees of Prime Care, CCDC, and/or Cecil County, who acted in the scope of their employment in committing the misconduct described herein.

161. Prime Care is liable as principal for all torts committed by its agents.

162. Cecil County is liable as principal for all torts committed by its agents.

## VI. RELIEF REQUESTED

Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein. Wherefore, Plaintiffs hereby pray for and seek from the Defendants, jointly and severally, the following relief:

> 1) pecuniary damages necessitated by Defendants' acts;
> 2) compensatory damages in the amount of $20,000,000.00;
> 3) punitive damages in the amount of $100,000,000.00 for each defendant, for which all other facts set forth in this Complaint will be used as evidence to prove;
> 4) attorney's fees; and
> 6) any other relief which this Court decides is necessary in the interest of justice.

## VI. JURY DEMAND

Plaintiff respectfully demands a jury trial in this matter.

Respectfully submitted,

_____
RANDY EVAN MCDONALD, Esq.
1001 L Street, SE
Washington, DC 20003
Telephone: (240)491-7609
Bar Number: 17656
randyemcdonald@gmail.com
Counsel for the Plaintiffs