IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **CRYSTAL RICE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | Civ. No. MJM-23-2344 |
| v. | * | |
| | * | |
| **CECIL COUNTY, MARYLAND,** *et. al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Crystal Rice ("Plaintiff"), in her individual capacity and as Personal Representative of the Estate of Cynthia Rice ("Ms. Rice"), brings this action against defendants Cecil County, Maryland ("Cecil County"); PrimeCare Medical, Inc. ("Prime Care"); Scott Adams, Sheriff of Cecil County ("Sheriff Adams"); sixteen named individual deputy sheriffs who served as custody officers at Cecil County Detention Center ("CCDC"); seven named individual employees of PrimeCare; and a number of unnamed individual custody officers at CCDC and employees of PrimeCare (collectively, "Defendants"). ECF No. 1 (Compl.). Plaintiff alleges violations of 42 U.S.C. § 1983 and Article 24 of the Maryland Declaration of Rights, negligence, intentional infliction of emotional distress, wrongful death, respondeat superior, and indemnification. *See generally id.* Plaintiff's claims arise out of Ms. Rice's death from opioid withdrawal while in custody at CCDC. *Id.* ¶¶ 77–78.

Cecil County, Sheriff Adams, and eleven of the named deputy sheriffs (collectively, the "Custody Defendants") filed a Motion to Dismiss, or in the Alternative, Motion for Summary

1

Judgment, or in the Alternative, to Bifurcate and Stay Discovery. ECF No. 24. PrimeCare filed a Motion to Dismiss for Failure to State a Claim. ECF No. 30.[1] Ms. Rice filed responses to both motions. ECF Nos. 38, 39. The Custody Defendants replied. ECF No. 42.

A hearing is not necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2023). For the following reasons, the Court shall grant in part and deny in part the Custody Defendants' Motion to Dismiss and grant PrimeCare's Motion to Dismiss.

I.      **FACTUAL BACKGROUND**

CCDC is a detention facility located in Elkton, Cecil County, Maryland. ECF No. 1 ¶ 1. Sheriff Adams "was and is responsible for the care and custody of the detainees and inmates at CCDC . . . ." *Id.* ¶ 26. PrimeCare, a Pennsylvania corporation, is a contract provider of medical services to detainees housed in CCDC. *Id.* ¶¶ 27, 28.

On August 28, 2020, Cynthia Rice was arrested and detained in Cecil County. *Id.* ¶ 58. Ms. Rice was booked into CCDC at 11:09 p.m. *Id.* ¶ 60. During her booking, she informed the staff, including both deputy sheriffs and PrimeCare employees, that she was suffering from opiate withdrawal and rheumatoid arthritis. *Id.* ¶¶ 12, 61. At her intake medical screening a few hours after her booking, medical staff noted that Ms. Rice was listed as a heroin addict and had suffered heroin withdrawal during previous incarcerations. *Id.* ¶¶ 65a, 65h. Ms. Rice indicated that she used four bags of heroin a day, seven days a week. *Id.* ¶ 65i. The medical staff also found that Ms. Rice showed signs of depression; was anxious, panicked, afraid, or angry; appeared to be on a drug at the time of the screening; and had poor gums and teeth. *Id.* ¶¶ 65c–65d, 65j. Ms. Rice informed

---

[1]      Although PrimeCare's motion states that the "Complaint fails to state a claim for relief against [PrimeCare]," ECF No. 30 at 1, PrimeCare's brief in support of the motion only argues for dismissal of Counts I and II, *see generally* ECF No. 30-1. Therefore, the Court construes the motion as seeking only partial dismissal of the Complaint—i.e., dismissal as to Counts I and II.

the staff in her screening that she consented to be treated and felt body aches but did not have a fever. *Id.* ¶¶ 65k–65l. During her intake screening, Ms. Rice experienced high blood pressure. *Id.* ¶ 67. She was placed on a "high priority" detox check appointment and was taken back to her cell at around 3:00 a.m. on August 29. *Id.* ¶¶ 68–69.

At around 9:00 a.m. on August 29, someone at CCDC put in an order for an opioid detox and clonidine for Ms. Rice. *Id.* ¶ 70. At 9:52 a.m., Ms. Rice reported being in pain to a level of ten out of ten and was prescribed blood pressure medication. *Id.* ¶ 72. Despite her intake screening indicating she would need a detox appointment, Ms. Rice was not given any medication for her withdrawal while in CCDC, nor was she given the prescribed blood pressure medication. *Id.* ¶¶ 71, 74. Throughout the morning of August 29, Ms. Rice remained in pain, screaming, and writhing around in her cell, but received no assistance from custody staff or medical staff. *Id.* ¶ 75. Instead, "medical and custody staff . . . told her to 'shut up' while she winced in pain." *Id.* ¶ 9. At 12:30 p.m., a deputy found Ms. Rice unresponsive in her cell, and she was later pronounced dead from opioid withdrawal. *Id.* ¶¶ 63, 77–78.

## II.   PROCEDURAL BACKGROUND

Plaintiff brought this action on her own behalf and as personal representative for Ms. Rice's estate on August 25, 2023. ECF No. 1. The Complaint alleges eight counts against the various defendants: (1) violation of 42 U.S.C. § 1983 for denial of medical care in violation of the Eighth and Fourteenth Amendments, against Custody Defendants, PrimeCare, and certain PrimeCare employees ("Count I"); (2) violation of 42 U.S.C. § 1983 for a policy and practice of denial of medical care, against Cecil County and PrimeCare ("Count II"); (3) violation of Article 24 of the Maryland Declaration of Rights, against all Defendants ("Count III"); (4) negligence, against Custody Defendants ("Count IV"); (5) intentional infliction of emotional distress, against all

Defendants ("Count V"); (6) wrongful death, against all Defendants ("Count VI"); (7) respondeat superior, against Cecil County and PrimeCare ("Count VII"); and (8) indemnification, against Cecil County and PrimeCare ("Count VIII"). *See generally* ECF No. 1.

On December 27, 2023, Custody Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, or in the Alternative, to Bifurcate and Stay Discovery. ECF No. 24. On February 12, 2024, PrimeCare filed a Motion to Dismiss for Failure to State a Claim. ECF No. 30. Ms. Rice filed responses to both motions on May 17, 2024. ECF Nos. 38, 39. On June 18, 2024, Custody Defendants replied. ECF No. 42.

**III.   STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at

4

555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (second alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider matters outside the pleadings attached to a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). If the court does so, "the motion must be treated as one for

summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

The Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)). "[W]here the parties have not had an opportunity for reasonable discovery," summary judgment is inappropriate. *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011) (citation omitted).[2]

## IV. DISCUSSION

### A. Count I

In Count I of her Complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983 for deliberate indifference to Ms. Rice's medical needs and failure to provide medical care. ECF No. 1 ¶¶ 79–94. The Custody Defendants and PrimeCare each move to dismiss this count for failure to state a claim. ECF Nos. 24-1 at 6–16, 30 at 2–6.

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Thus, to sustain an action under § 1983, a plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission

---

[2] Here, the Court finds that, because the parties have had no opportunity for reasonable discovery, it would be inappropriate to convert Custody Defendants' motion to dismiss to one for summary judgment. The Court, therefore, declines to consider the exhibits attached to the motion.

6

causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 45 n.3 (1988). Liability under § 1983 attaches only upon personal participation by a defendant in a constitutional violation. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing claim for willful denial of medical care when plaintiff was unable to show that the official charged acted personally in the deprivation of rights); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) ("[L]iability is personal, based upon each defendant's own constitutional violations.").

The Due Process Clause of the Fourteenth Amendment "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F. 4th 593, 608–09 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). A pretrial detainee may "state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." *Id.* at 604–05.

> To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* at 611. It is "not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12.

The Court finds that Plaintiff adequately states a § 1983 claim against the individual Custody Defendants for deliberate indifference to Ms. Rice's medical needs. Plaintiff alleges that,

7

while in custody at CCDC on August 29, 2020, Ms. Rice suffered opioid withdrawal, a medical condition that posed a substantial risk of serious harm. ECF No. 1 ¶¶ 6, 7, 11, 82. She further alleges that, when Ms. Rice was booked into CCDC on August 28, Ms. Rice told both custody staff and medical staff that she had recently used opiates and would undergo withdrawal, and she began exhibiting obvious symptoms of withdrawal. *Id.* ¶¶ 12, 59, 61. "Medical records indicate that the medical staff and custody staff were made aware that Ms. Rice would suffer withdrawal." *Id.* ¶ 8. On the morning of August 29, she "screamed and writhed in pain" from withdrawal, and "[t]he custody staff at CCDC told her to 'shut up'" without providing assistance. *Id.* ¶¶ 9, 75. Plaintiff alleges that each individual Custody Defendant was "made aware of Ms. Rice's condition by observing it themselves, by being informed of her condition by other detainees in the facility, and by being informed by other employees and personnel of Prime Care and the CCDC." *Id.* ¶ 84. Thus, Ms. Rice's condition was known or should have been known to each individual Custody Defendant. *Id.* Plaintiff further alleges that each individual Custody Defendant "failed to respond" to Ms. Rice's requests for medical attention despite their knowledge of Ms. Rice's medical needs and "despite knowing that a failure to address opioid withdrawal with immediacy and urgency can cause serious pain, significant injury and death." *Id.* ¶ 82. The foregoing allegations suffice to state a claim for deliberate indifference in violation of Ms. Rice's due process rights.[3]

---

[3]   The individual Custody Defendants argue that they are entitled to qualified immunity for alleged violations of Ms. Rice's constitutional rights. ECF No. 24-1 at 15. "Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018)).

Here, Ms. Rice had a clearly established right to medical treatment for her serious medical condition. *See Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022) ("[A] prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976.") (quoting *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). Plaintiff alleges that individual Custody Defendants violated that clearly established right. *See*

Plaintiff concedes in her response to Custody Defendants' motion that Count I is inapplicable to Cecil County. ECF No. 38 at 10. Accordingly, Count I shall be dismissed as to Cecil County.

Count I shall also be dismissed as to PrimeCare. "[A] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights."[4] *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Notably, there is no respondeat superior liability under § 1983, so PrimeCare is not liable under § 1983 for the conduct of its employees. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge*, 550 F.2d at 928.

In sum, Defendants' motions shall be granted as to the claims in Count I against Cecil County and PrimeCare, which shall be dismissed with prejudice. The motions will be denied as to the claims in Count I against the individual Custody Defendants.[5]

**B. Count II**

In Count II of her Complaint, Plaintiff asserts a claim under § 1983 that Cecil County and PrimeCare each had policies and practices of denying medical care to detainees at CCDC. ECF No. 1 ¶¶ 95–112. The Custody Defendants and PrimeCare each move to dismiss this count for failure to state a claim. ECF Nos. 24-1 at 16–21, 30 at 2–6.

---

*supra*. Thus, at this stage of the litigation, the Court cannot find that the individual Custody Defendants are entitled to qualified immunity from suit under § 1983.

[4] Plaintiff alleges separately, in Count II, that PrimeCare is liable for maintaining policies that resulted in Ms. Rice's death. The Court will separately address the merits of that claim *infra*.

[5] The Court construes Count I as asserted against the individual Custody Defendants solely in their individual capacities. "[N]either States nor state officials acting in their official capacities constitute 'persons' within the meaning of [42 U.S.C. § 1983] when sued for monetary relief." *Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). In her response to Custody Defendants' motion, Plaintiff denies asserting any claims in Count I against the individual defendants in their official capacities. ECF 38 at 3–4.

9

A municipality may be liable for a deprivation of federal rights "[o]nly in cases where [it] causes the deprivation 'through an official policy or custom' . . . ." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[In § 1983], Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *Love-Lane*, 355 F.3d at 782 ("To hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation."). To prevail on a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle*, 326 F.3d at 471 (citation omitted).

Proving a *Monell* claim requires the plaintiff to show three elements: (1) the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee taken to further municipal policy or custom; (2) the plaintiff must establish facts showing that the policy's creation may be attributed to the municipality; and (3) the plaintiff must prove an affirmative causal link between the policy and the injury suffered. *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520, 532 (D. Md. 2020).

A private corporation may also be liable under § 1983 "when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin*, 195 F.3d at 728.

The Court finds the allegations in the Complaint insufficient to support a reasonable inference that either Cecil County or PrimeCare maintained policies or customs that resulted in the denial of medical care to Ms. Rice. Plaintiff fails to identify or cite any Cecil County policy, regulation, or ordinance; any decision made by a Cecil County official with policymaking authority; or any persistent and widespread practice among Cecil County employees that caused Ms. Rice to be denied medical care. Plaintiff alleges, "on information and belief" and in a formulaic fashion, that Cecil County maintained policies, practices, and customs regarding the treatment of detainees, including underreporting the severity of serious medical emergencies and deliberately ignoring detainees' medical complaints. ECF No. 1 ¶¶ 98–103. However, Plaintiff alleges no facts to support a reasonable inference that any such policies or customs exist in Cecil County or that Cecil County otherwise fails to train its employees or instructs its employees to deprive detainees of medical care. Plaintiff's allegations against PrimeCare are similarly conclusory and lacking in specific factual support. *See Talley v. Anne Arundel Cnty., Maryland*, Civ. No. RDB-21-347, 2021 WL 4244759, at *13 (D. Md. Sept. 17, 2021) ("barebones" allegations insufficient to survive a motion to dismiss); *Krell v. Queen Anne's Cnty.*, Civ. No. JKB-18-637, 2018 WL 6523883, at 21 n.7 (D. Md. Dec. 12, 2018) (dismissing *Monell* claim when plaintiff made only conclusory statements regarding a municipal policy or custom).

Plaintiff's allegations about Ms. Rice's experience in CCDC on August 28, 2020, are, without more, inadequate grounds to support an inference of any policy or widespread practice within CCDC. "[O]ne or two isolated constitutional violations alone cannot constitute a policy or custom of unconstitutional conduct." *Palma v. Montgomery Cnty., Maryland*, 598 F. Supp. 3d 288,

297 (D. Md. 2022). *See also Carter v. Morris*, 164 F.3d 215, 219–20 (4th Cir. 1999) (holding that after "filter[ing] out unrelated accusations," two instances outside of plaintiff's accusation insufficient to establish municipal custom); *Brooks v. St. Charles Hotel Operating, LLC.*, Civ. No. DLB-23-0208, 2023 WL 6244612, at *10 (D. Md. Sept. 26, 2023) (holding plaintiff failed to allege incidents similar to his own and, citing *Palma*, one constitutional violation does not constitute a policy or custom).

Moreover, other facts alleged in the Complaint tend to undermine any reasonable inference that either Cecil County or PrimeCare had policies and practices in place to deny detainees medical care. For example, Plaintiff alleges that PrimeCare had "a contract with CCDC and/or Cecil County to provide medical services to detainees housed in CCDC pursuant to CCDC and/or Cecil County's duty to provide medical care to those detainees." ECF No. 1 ¶ 28. In the absence of citation to any specific policy or any facts demonstrating a widespread practice within CCDC, the PrimeCare contract described in the Complaint tends to undermine the inference that PrimeCare and Cecil County had policies and practices in place to *deny*—rather than "provide"—medical care to CCDC detainees. Plaintiff also alleges in the Complaint that Sheriff Adams and his deputies were "responsible for the care and custody of the detainees and inmates at CCDC . . . ." ECF No. 1 ¶ 26. The Sheriff and his deputies are employees of the State of Maryland—not Cecil County. *See Rucker v. Harford Cnty.*, 558 A.2d 399, 406 (Md. 1989).[6] If the Sheriff (not Cecil County) is responsible for the care and custody of detainees, and PrimeCare has a contract making it (not Cecil County) responsible for medical care of detainees, it seems unlikely that Cecil County would have any policies or practices to deny medical care to detainees of CCDC.

---

[6] The status of the Sheriff and deputy sheriffs as employees of the State is a matter of public record that the Court may consider in ruling on a Rule 12(b)(6) motion. *Bowman v. Jack Cooper Transp. Co. Inc.*, 399 F. Supp. 3d 447, 451 (D. Md. 2019) (citing *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

The Court notes again that the conclusory allegations in support of Count II are largely made "on information and belief." ECF No. 1 ¶¶ 98–101. Courts in this district have held that "using 'upon information and belief' as a pleading device survives a motion to dismiss only where 'the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) (quoting *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014), and *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Here, Plaintiff offers no specific factual information to render plausible her belief that Cecil County and PrimeCare maintain policies and practices to deprive CCDC detainees of access to medical care, especially considering the aforementioned facts that tend to undermine such a belief. And, furthermore, the allegations in the Complaint are inadequate to establish that Plaintiff lacks access to specific information or evidence regarding the policies and practices she attributes to Cecil County and PrimeCare.

Ultimately, Plaintiff's "conclusory allegations 'upon information and belief' are insufficient to establish a *Monell* claim because Plaintiff does not explain which facts, other than [Ms. Rice's] alleged experiences in [CCDC], support her belief that [her] alleged deprivation of rights is part of [Cecil County's or PrimeCare's] existing 'customs, patterns, or practices.'" *Fleming v. City of New York*, No. 18 Civ. 4866 (GBD), 2019 WL 4392522, at *8 (S.D.N.Y. Aug. 27, 2019) (citations omitted), *quoted in Fox v. City of Greenville*, No. 4:23-CV-00133-M, 2024 WL 3093583, at *7 (E.D.N.C. June 21, 2024).

Count II is therefore subject to dismissal, and Defendants' motions shall be granted as to this count. However, the Court will dismiss Count II without prejudice, to avoid precluding Plaintiff from re-asserting a *Monell* claim should she acquire greater factual support.

### C. Count III

In the third count of her Complaint, Plaintiff alleges that Custody Defendants violated Article 24 of the Maryland Declaration of Rights[7] by ignoring the medical needs of inmates who were known to have serious medical conditions, assuming detainees were faking illnesses, and failing to provide emergency medical attention. ECF No. 1 ¶¶ 113–28. The individual Custody Defendants argue that Ms. Rice's Article 24 claim against them must fail because Ms. Rice failed to comply with the notice requirements in the Maryland Tort Claims Act ("MTCA") and has not alleged that they acted with malice or gross negligence sufficient to overcome immunity. ECF No. 24-1 at 21–23. As a general matter, if a plaintiff wants to bring a claim against the State or a state official under the MTCA, "certain notice requirements must be met. Specifically, under the MTCA, a claimant must submit a written claim to the Treasurer of the State of Maryland within one year of the date of injury to person or property." *Gray v. Maryland*, 228 F. Supp. 2d 628, 640 (D. Md. 2002); *see also* Md. Code Ann., State Gov't § 12-106(b).[8] However, as courts in this district have recognized, if a claim sufficiently alleges malice or gross negligence, the claim "fall[s] outside the MTCA and the State Treasurer does not require early notice." *Francis v. Maryland*, Civ. No. ELH-21-1365, 2024 WL 1156407, at *21 (D. Md. Mar. 18, 2024) (quoting *Pope v. Barbre*, 915 A.2d 448, 462 (2007)).

---

[7] Article 24 is "the state law equivalent of the Fourteenth Amendment of the United States." *Bost v. Wexford Health Sources, Inc.*, Civ. No. ELH-15-3278, 2018 WL 3539819, at *42 (D. Md. July 23, 2018). "Article 24 is ordinarily interpreted *in pari materia* with its federal analog." *Id.* (citing cases). In other words, "the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment." *Id.* (citation omitted).

[8] A court may, "on motion by a claimant and for good cause shown," permit an action under the MTCA to proceed without a claim having been filed the Treasurer "unless the State can affirmatively show that its defense has been prejudiced by the claimant's failure to submit the claim." Md. Code Ann., State Gov't § 12-106(c)(1). Plaintiff requests this Court find good cause to excuse her failure to provide adequate notice, ECF No. 38 at 12–13, but because Plaintiff has sufficiently alleged that the individual Custody Defendants acted with malice or gross negligence, the notice requirement does not apply. *See infra*.

14

As Maryland state officials, the individual Custody Defendants are immune from suit under the MTCA "for state constitutional violations committed within the scope of their duties when the violations are made 'without malice or gross negligence.'" *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011) (quoting *Lee v. Cline*, 863 A.2d 297, 307 (Md. 2004)). In order to defeat the immunity provided by the MTCA, a plaintiff must show that the defendant state employee acted with malice or gross negligence. Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). "For MTCA purposes, malice is conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Nero v. Mosby*, 890 F.3d 106, 127 (4th Cir. 2018) (cleaned up). "To establish malice, a plaintiff must show that the government official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Id.* (quoting *Bord v. Baltimore County*, 104 A.3d 948, 964 (Md. Ct. Spec. App. 2014)). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, something *more* than simple negligence, and likely more akin to reckless conduct." *Id.* at 127–28 (cleaned up). "A government official commits gross negligence 'only when he or she inflicts injury intentionally or is so utterly indifferent to the rights of others that he or she acts as if such rights did not exist.'" *Id.* at 128 (quoting *Cooper v. Rodriguez*, 118 A.3d 829, 846 (Md. 2015)). The Maryland Supreme Court has consistently recognized "that the determination of whether a State actor enjoys State personnel immunity is a question for the trier of fact." *Newell v. Runnels*, 967 A.2d 729, 763 (Md. 2009) (citing cases).

Here, the Complaint sufficiently alleges that the individual Custody Defendants acted with malice or gross negligence, overcoming MTCA immunity and the notice requirement. Plaintiff

15

alleges that while in custody at CCDC, Ms. Rice suffered from painful opioid withdrawal, and that custody staff knew Ms. Rice had recently used opiates, would go through withdrawal, and began exhibiting symptoms of withdrawal. ECF No. 1 ¶¶ 6, 7, 8, 11, 12, 59, 61, 82. On the morning of August 29, Ms. Rice "screamed and writhed in pain" from withdrawal, and "[t]he custody staff at CCDC told her to 'shut up'" without providing assistance. *Id.* ¶¶ 9, 75. These allegations support a reasonable inference of both malice and deliberate indifference on part of the individual Custody Defendants. Plaintiff alleges that each individual Custody Defendant was aware of Ms. Rice's condition but failed to respond, notwithstanding Ms. Rice's pain and distress and the risk of severe injury or death. *Id.* ¶ 84. These allegations suffice to support a reasonable inference of gross negligence on behalf of the individual Custody Defendants.

In sum, Plaintiff alleges sufficient facts to state a plausible claim that individual Custody Defendants denied Ms. Rice medical care with malice or gross negligence and in violation of Ms. Rice's Article 24 rights. Therefore, the Custody Defendants' Motion to Dismiss will be denied as to the Article 24 claims against the individual Custody Defendants in Count III.

Plaintiff's Article 24 claim against Cecil County amounts to a *Longtin* claim. *See Prince George's Cnty. v. Longtin*, 19 A.3d 859 (Md. 2011). A *Longtin* claim is the Maryland state law analogue to a *Monell* claim. *Palma*, 598 F. Supp. 3d at 297 n.5. "*Monell* and *Longtin* claims rise or fall together, and the Court need not undertake an independent analysis of the sufficiency of the latter." *Id.* Therefore, like Plaintiff's *Monell* claim against Cecil County, Plaintiff's Article 24 *Longtin* claim against Cecil County must be dismissed.

### D. Counts IV, V, and VI

In the Counts IV, V, and VI of the Complaint, Plaintiff alleges that Custody Defendants are liable for negligence, ECF No. 1 ¶¶ 129–36, intentional infliction of emotional distress, *id.* ¶¶ 137–47, and wrongful death under Maryland common law, *id.* ¶¶ 148–53.

In their Motion to Dismiss, Custody Defendants argue that the common law claims against the individual Custody Defendants must fail because of the Plaintiff's failure to comply with the MTCA's notice requirement, Plaintiff's failure to overcome MTCA immunity by adequately pleading malice or gross negligence, and the Plaintiff's failure to adequately allege wrongful death predicated on deliberate indifference. ECF No. 24-1 at 26–27.

As explained in Part IV.C *supra*, Plaintiff alleges sufficient facts to demonstrate that individual Custody Defendants acted with malice and/or gross negligence, which overcomes both immunity for state employees under the MTCA and the statute's notice requirement. Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). Accordingly, Custody Defendants' Motion to Dismiss shall be denied as to the claims in Counts IV, V, and VI against the individual Custody Defendants.

Further, Custody Defendants argue that the common law tort claims against Cecil County must be dismissed both because CCDC is run by State employees with medical care outsourced to PrimeCare, and because Cecil County would be immune from tort liability based on governmental acts. ECF No. 24-1 at 27–28. Plaintiff responds that Maryland counties may be held liable under the doctrine of respondeat superior for the tortious conduct of their employees within the scope of their employment; thus, because the Complaint describes actions alleged to have been committed by Cecil County employees, the tort claims can be maintained. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-302. However, the Complaint does not allege any acts by Cecil County employees, only those of state employees and PrimeCare employees. *See Rucker*, 558 A.2d at 406 (sheriff and

17

deputy sheriffs are "officials and/or employees of the State of Maryland rather than" county officials or employees).

Because the Complaint does not identify any specific Cecil County employees who engaged in tortious conduct for which the County can be liable for under a theory of respondeat superior, the common law tort claims against Cecil County must be dismissed.

Second, Cecil County itself has governmental immunity, shielding the County from tort liability arising from a governmental function. Under Maryland law, local governments are immune from tort liability when functioning in a "governmental" capacity, although not when engaged in "proprietary" or "private" activities. *Clark v. Prince George's Cnty.*, 65 A.3d 785, 790 (Md. Ct. Spec. App. 2013) (citing *DiPino v. Davis*, 729 A.2d 354, 370–71 (Md. 1999)); *see also id.* at 791 ("[T]he Local Government Tort Claims Act . . ., does not specifically waive immunity for common law tort claims against a County or municipality in its own capacity, for governmental actions."). An act is governmental in nature if it "is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest." *Rios v. Montgomery Cnty.*, 872 A.2d 1, 15 (Md. 2005) (quoting *Mayor & City Council of Balt. v. Blueford*, 195 A. 571, 576 (Md. 1937)). Courts in Maryland have stated that operating detention centers is a government function. *See Jones Hollow Ware Co. of Balt. v. Crane*, 106 A. 274, 278, 115 (Md. 1919); *Wynkoop v. Hagerstown*, 150 A. 447, 450 (Md. 1930); *Jones v. Montgomery Cnty.*, 2016 WL 1321396, at *6 (Md. App. Ct. Apr. 5, 2016) ("[W]e agree with the County that the operation of a detention facility is a governmental function."); *Malone v. Wicomico Cnty.*, Civ. No. SAG-19-2412, 2021 WL 4060433, at *14 (D. Md. Sept. 7, 2021).

The common law tort claims asserted against Cecil County in Counts IV, V, and VI: (1) cannot rely on respondeat superior because no Cecil County employees are named or otherwise alleged to have engaged in any tortious conduct; and (2) arise from its operation of CCDC, giving the County immunity from these claims. These claims against Cecil County are therefore subject to dismissal and shall be dismissed with prejudice.

### E. Counts VII and VIII

In Counts VII and VIII of the Complaint, Plaintiff alleges that Cecil County is liable for the torts of its agents under theories of respondeat superior, ECF No. 1 ¶¶ 154–57, and indemnification, *id.* ¶¶ 158–62.

In their Motion to Dismiss, the Custody Defendants argue that Cecil County is not liable under a theory of respondeat superior or indemnification because the individual Custody Defendants are State officials, not county employees. *See Rucker*, 558 A.2d at 406 (concluding that sheriffs and their deputies are State, not county, employees).[9] Because the individual Custody Defendants are not Cecil County employees, Cecil County cannot be liable under a theory of respondeat superior or indemnification for any alleged wrongdoing. The Custody Defendants' Motion to Dismiss shall be granted on Counts VII and VIII. These claims will be dismissed without prejudice.

### V. CONCLUSION

For the foregoing reasons, the Custody Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, or in the Alternative, to Bifurcate and Stay Discovery[10] will

---

[9] As noted *supra*, the status of the Sheriff and deputy sheriffs as employees of the State, and not of Cecil County, is a matter of public record that the Court may consider in ruling on a Rule 12(b)(6) motion. *Bowman*, 399 F. Supp. 3d at 451 (citing *Philips*, 572 F.3d at 180).

[10] Because Counts II and III, the *Monell* and *Longtin* claims are dismissed as to Cecil County, the alternative motion to bifurcate will be denied as moot.

be granted in part and denied in part, and PrimeCare's Motion to Dismiss will be granted.[11] The claims against Cecil County and PrimeCare in Count I shall be dismissed with prejudice. Count II shall be dismissed without prejudice. The claims against Cecil County in Counts III, IV, V, and VI shall be dismissed with prejudice. The claims against Cecil County in Counts VII and VIII shall be dismissed without prejudice.

A separate Order shall issue.


DATE: September 27, 2024                               /S/
                                                Matthew J. Maddox
                                                United States District Judge

---

[11]   As noted *supra*, the Court construes PrimeCare's motion as seeking only partial dismissal of the Complaint—i.e., dismissal as to Counts I and II.